Filed 3/18/15  P. v. Stekkinger CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS STEKKINGER,<br><br>    Defendant and Appellant. | 2d Crim. No. B255690<br>(Super. Ct. No. 1421845)<br>(Santa Barbara County) |

Douglas John Stekkinger appeals from the judgment entered after a jury convicted him of elder abuse under circumstances likely to produce great bodily harm (Pen. Code, § 368, subd. (b)(1)),[1] assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), and battery with infliction of serious bodily injury.  (§ 243, subd. (d).)  As to the elder abuse and assault convictions, the jury found true allegations that appellant had personally inflicted great bodily injury on a person 65 years of age or older. (§ 12022.7, subd. (c).)  Appellant was sentenced to prison for eight years.

Appellant contends that the evidence is insufficient to support the jury's findings (1) that he did not act in self-defense, (2) that he knew or reasonably should have known that the victim was 65 years of age or older, and (3) that he inflicted great bodily injury.

---

[1] All statutory references are to the Penal Code.

In addition, appellant contends that the trial court erroneously failed to instruct the jury sua sponte on lesser included offenses.  We affirm.

*Facts*

In April 2012 Sean McGrath attended an Alcoholics Anonymous (A.A.) meeting at the Veterans Memorial Building in Santa Barbara.  He was 71 years old and had been attending A.A. meetings at this location for at least 25 years.  Appellant came to the meeting with his dog.  McGrath had not seen appellant or the dog at prior meetings.  He knew that dogs are not allowed inside the building.  When the meeting was over, McGrath said to appellant:  " 'There's no dogs allowed in the meetings, man.' "

A few days later, appellant brought his dog to another A.A. meeting.  At the start of the meeting, an announcement was made that pets are not permitted inside the building.  When the meeting was over, McGrath said to Scott Lewis, " 'Hey, . . . the pet is still here.' "  McGrath and Lewis informed appellant that the owner of the building does not allow dogs at meetings.  Appellant replied that he had been granted permission to bring the dog.  Lewis responded, " 'There's never been permission to do that here, you know.' "  McGrath "might have said, 'That's bullshit,' and laughed at it."  Appellant became "very agitated."  He "stomped out of the room" with his dog.

About a minute later, appellant approached McGrath without the dog.  Appellant's "face was kind of red.  He was hot.  He was pumped up."  He "was like a gladiator getting ready to fight."  He was "[l]ike a raging bull."  Appellant said to McGrath: " 'Fucking old man, don't tell me what to do.  You have no right.' "  " 'Where do you get off telling me I can't bring my dog into meetings? . . . That's a lot of bullshit.' "

Appellant turned around and started to leave.  McGrath "wanted him to stop and come back" so that he could explain the policy concerning dogs.  McGrath "reached [out] to grab him on the shoulder and say wait a minute, don't leave."  Lewis heard McGrath say: " 'Wait a second.  Hang on.  Just hear me out.  Hear me out."

McGrath suddenly heard a "loud bang" inside his head.  He "thought first something fell off the ceiling and hit me."  Blood was coming out of his nose and mouth.

2

It covered the "whole front" of his shirt. "[H]e was bleeding profusely." Blood was "all over the floor."

Appellant had punched McGrath in the cheek. Lewis testified: "[Y]ou could hear the bone crushing instantly, just this huge pop sound of his face crushing." It was "[b]rutal." "It was a roundhouse. I was right there. I was within six inches of him." "The sound of breaking bones startled me. The cracking of the cheekbone was powerful."

Another witness, Peter Novak, testified: "I saw [McGrath] put his left hand on [appellant's] right shoulder, and instantly [appellant] hit him as hard as he possibly could in the face." Before appellant hit McGrath, Novak heard McGrath say, " 'Listen.' " "It sound[ed] like he [also] said 'motherfucker,' but it was kind of mumbled." Novak told a police officer that McGrath had said, " 'Listen, motherfucker.' "

Lewis forced his body between appellant and McGrath. Lewis said to appellant, "Are you aware what you just did? You hit a senior citizen in the face with your fist. That's a felony in California." Appellant responded, " 'I don't care, he was choking me.' " Novak testified that McGrath had not choked appellant: "[McGrath] didn't have his hands on [appellant's] throat. He had one hand on his left shoulder and his thumb was touching the side of the neck slightly." Novak remembered the incident "really clearly, because it was literally two and a half to three feet from me."

An additional witness, Fredric Rifkin, recalled what he believed to be a "grabbing of the throat." On the other hand, Rifkin testified that, although he saw McGrath "reach out" toward appellant, he could not recall whether "there was actual contact." Later during his testimony, Rifkin said that McGrath had "pushed [appellant] on the chest, below the neck, with an open hand." Rifkin noted that he had memory problems: "I've got problems remembering what I had for breakfast today."

Appellant did not testify. He called one witness, Cheryl Giefer, who had been present at the A.A. meeting. She "heard a scuffling and yelling" and "turned around to witness [McGrath] standing in front of [appellant]." McGrath had blood on his shirt. He "was leaning in towards [appellant]" with "his finger pointed." McGrath said to

3

appellant, " 'You better watch your back, you just better watch your back.' " Appellant replied, " 'Man, keep your hands off me, man. Why did you put your hands on me, man?"

Eight days after his injury, McGrath saw Dr. Robert Kiken, a maxillofacial surgeon. McGrath complained of facial pain and "had difficulty in opening his mouth because those muscles were bruised and sore." Dr. Kiken found that "the area of his cheekbone and the anterior wall of his maxillary sinus were crumbled." He also had a fracture "of the floor of the orbit, which is the bone that holds your eye above the sinus." Dr. Kiken testified: "The whole anterior wall of his sinus kind of crumbled, so it [the blow to McGrath's cheek] was a reasonably solid, well-directed blow that caused that to happen."

Dr. Kiken performed surgery on the injured area of McGrath's face. To reconstruct his cheekbone, he inserted three plates that were secured by 14 screws.

*Sufficiency Of The Evidence*

Appellant argues that the evidence is insufficient to support the jury's finding that he did not act in self-defense when he punched McGrath. The jury was instructed that "[s]elf-defense is a defense" to the charged crimes and that "[t]he People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense."

"[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find" beyond a reasonable doubt that appellant did not act in lawful self-defense. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a

4

single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

" 'To justify an act of self-defense . . . , the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]' [Citations.]" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-65.)

Substantial evidence supports the jury's finding that appellant did not act in self-defense. McGrath and Novak testified that McGrath merely put his hand on appellant's shoulder without threatening to harm him. Lewis also did not hear McGrath utter any threats. Based on this evidence, a reasonable trier of fact could find beyond a reasonable doubt that appellant did not reasonably believe that McGrath was about to inflict bodily injury upon him. Appellant's assault was apparently triggered not by a threat of imminent bodily injury, but by his anger at McGrath for insisting that he not bring his dog to A.A. meetings.

### Finding that McGrath Was 65 Years of Age or Older

Appellant was convicted of elder abuse under circumstances likely to produce great bodily harm. (§ 368, subd. (b)(1).) One of the elements of this offense is that the defendant "knows or reasonably should know that [the] person is an elder." (*Ibid*.) " '[E]lder' means any person who is 65 years of age or older." (*Id*., subd. (g).) Appellant contends that the evidence is insufficient to show that he knew or reasonably should have known that McGrath was an elder.

In *People v. Smith* (1993) 13 Cal.App.4th 1182, the defendant made the same contention as to a sentencing enhancement imposed pursuant to section 667.9, subdivision (a). The enhancement applied only if the defendant knew or reasonably should have known that the defendant was 65 years of age or older. In rejecting the defendant's argument that the evidence was insufficient, the court reasoned: "Here, the record shows that the evidence presented to the jury included [the victim's] physical appearance before the jury. Evidence was also presented that [the victim] was just three

months short of her 68th birthday on the day of the robbery. We therefore presume, in support of the judgment, that the jury could reasonably deduce from its view of [the victim's] physical appearance that defendant reasonably should have known that she was at least 65 years old." (*Id*., at p. 1190.)

As in *Smith*, here the victim - McGrath - also appeared before the jury. The trial occurred in November 2013, 19 months after the commission of the offense in April 2012. It is reasonable to infer that McGrath's appearance had not materially changed during the 19-month interval. In any event, the trial court admitted into evidence photographs of McGrath's face taken shortly after the injury. "We therefore presume, in support of the judgment, that the jury could reasonably deduce from its view of [McGrath's] physical appearance [in court and in the photographs] that [appellant] reasonably should have known that [McGrath] was at least 65 years old." (*People v. Smith*, *supra*, 13 Cal.App.4th at p. 1190.)

Furthermore, the jury could reasonably find that appellant actually knew that McGrath was at least 65 years old. Before the assault appellant said to McGrath, " 'Fucking *old* man, don't tell me what to do.' " (Italics added.) Immediately after the assault, Lewis told appellant that he had committed a felony because he had "hit a senior citizen in the face." Appellant did not show surprise or deny that he had hit a senior citizen. He responded, " 'I don't care, he was choking me.' " Appellant's response is an adoptive admission. " ' "[A] typical example of an adoptive admission is the accusatory statement to a criminal defendant made by a person *other* than a police officer, and defendant's conduct of silence, or his words or equivocal and evasive replies in response. With knowledge of the accusation, the defendant's conduct of silence or his words in the nature of evasive or equivocal replies lead reasonably to the inference that he believes the accusatory statement to be true." [Citation.]' [Citation.]" (*People v. Jennings* (2010) 50 Cal. 4th 616, 661.)

### Finding of Great Bodily Injury

Appellant argues that the evidence is insufficient to support the finding that, as to the elder abuse and assault convictions, he inflicted great bodily injury on McGrath.

6

(§ 12022.7, subd. (c).) "Great bodily injury 'means a significant or substantial physical injury.' [Citations.] . . . [D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.]" (*People v. Cross* (2008) 45 Cal. 4th 58, 63-64.) "[G]reat bodily injury [is] 'substantial injury *beyond* that inherent in the offense. [Citations.] . . . [T]o be significant or substantial the injury need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage. [Citation.]" (*Id*., at p. 64.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*Id*., at p. 706.)

Sufficient evidence supports the jury's finding that McGrath suffered great bodily injury. Appellant's blow caused substantial injury beyond that inherent in the charged offenses. McGrath sustained an orbital floor fracture. "[T]he area of his cheekbone and the anterior wall of his maxillary sinus were crumbled." The injury caused him to bleed "profusely" from his nose and mouth. For days after the injury, McGrath experienced "shooting pains, headaches." When McGrath saw Dr. Kiken eight days after the injury, he "had difficulty in opening his mouth because those muscles were bruised and sore." To repair the damage to McGrath's face, surgery was required. The surgery was not a simple matter. Dr. Kiken had to reconstruct McGrath's cheekbone. He inserted three plates that were secured by 14 screws. After the surgery, McGrath continued to have "headaches and [his] whole face would just contort."

*Alleged Failure to Instruct Sua Sponte on Lesser Included Offenses*

Appellant contends that the trial court erroneously failed to instruct the jury sua sponte on lesser included misdemeanor offenses: simple assault (§ 240), simple battery (§ 242), and elder abuse "under circumstances or conditions other than those likely to produce great bodily harm or death." (§ 368, subd. (c).) A court is not required to instruct sua sponte on a lesser included offense " ' " 'when there is no evidence that the offense was less than that charged. [Citations.]' " [Citation.] "[T]he existence of '*any*

7

evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]" ' [Citations.]" (*People v. Wyatt* (2012) 55 Cal. 4th 694, 698.)

Here, there is no evidence " ' " 'substantial enough to merit consideration' by the jury" ' " that appellant committed merely a simple assault or battery or misdemeanor elder abuse under circumstances other than those likely to produce great bodily harm. (*People v. Wyatt*, *supra*, 55 Cal. 4th at p. 698.) Lewis testified that appellant had delivered a "[b]rutal," "roundhouse" punch to McGrath's face. "[Y]ou could hear the bone crushing instantly, just this huge pop sound of his face crushing." Novak testified that he saw appellant hit McGrath "as hard as he possibly could in the face." Appellant's punch "reminded [Novak] of . . . the movie 'Rocky,' where he's beating up the meat in the locker room." Novak continued: "I never seen [*sic*] anybody in my life get hit like that before." The power of appellant's blow is evidenced by the blood that poured from McGrath's nose and mouth and the extensive damage that it caused to McGrath's face.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:



GILBERT, P.J.



PERREN, J.


8

Frank J. Ochoa, Judge

Superior Court County of Santa Barbara

_____

Pamela J. Voich, under appointment by the Court of Appeal, FOR Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Pau. M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.